UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
──────────────────────────────────────x

UNITED STATES OF AMERICA,
ex rel. THE SAINT REGIS MOHAWK TRIBE,

                Plaintiff,

      against-

PRESIDENT R.C. – ST. REGIS
MANAGEMENT COMPANY and
ANDERSON-BLAKE CONSTRUCTION
CORPORATION,

                Defendants.
──────────────────────────────────────x



Civil Action No. _____



02-CV-0845

TJM DEP

Summons Iss'd.
(ict)

## COMPLAINT

NOW COMES Plaintiff, the United States of America, by and through Relator, The Saint Regis Mohawk Tribe, and hereby complains against the Defendants as follows:

### NATURE OF THE ACTION

1.    This is a *qui tam* civil action brought by The Saint Regis Mohawk Tribe (the "Tribe") on behalf of the United States of America to void a January 1998 construction contract between the Tribe and Defendants. Neither the Secretary of the Department of the Interior nor the Commissioner of the Bureau of Indian Affairs approved the contract even though such approvals were required pursuant to the former 25 U.S.C. § 81 (1958), amended by 25 U.S.C. § 81(a)-(e) (2000). Therefore, the construction contract is null and void.

### JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1362, and the former 25 U.S.C. § 81 (1958), amended by 25 U.S.C. § 81(a)-(e) (2000).

BARR & ASSOCIATES, P.C.
ATTORNEYS AT LAW
125 MOUNTAIN ROAD
STOWE, VT 05672
TEL: 802-253-6272
FAX: 802-253-6055

3. Under the former Section 81, non-Indian parties contracting with Indian tribes must submit certain contracts that are "relative to" Indian lands to the Secretary of the Department of the Interior (through the Bureau of Indian Affairs ("BIA")) for approval. Contracts requiring approval under the former Section 81 are null and void absent such approval.

4. Venue properly lies in the Northern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because the property that is the subject of this action, namely the Akwesasne Mohawk Casino, is situated in this District. In addition, a substantial part of the events and omissions giving rise to the claim occurred in this District.

## THE PARTIES

5. The Plaintiff in this action is the United States of America.

6. The Tribe, which brings this action in the name of and on behalf of the United States of America pursuant to the former Section 81, is a sovereign tribal entity that appears on the periodic list of federally recognized Indian Tribes published by the United States Department of the Interior. As such, the Tribe exercises all the powers available to sovereign governments. All of the lands of the Tribe's Akwesasne Territory are either held by the Tribal Government or held in trust by the United States Government for the use of Tribe members.

7. Upon information and belief, Defendant President R.C. - St. Regis Management Company ("President") is a New York general partnership with a principal place of business at 333 Earle Ovington Boulevard, Uniondale, New York 11553.

8. Upon information and belief, Defendant Anderson-Blake Construction Corporation ("Anderson-Blake") is a duly authorized New York corporation with a principal place of business at 135 West Gate Drive, Huntington, New York 11743.

## THE STATUTORY SCHEME

9. At the time the parties entered into the construction contract in question, at all other relevant times, and until March 14, 2000, when Section 81 was amended, the statute read:

> No agreement shall be made by any person with any tribe of Indians, or individual Indians not citizens of the United States, for the payment or delivery of any money or other thing of value, in present or in prospective, or for the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands, or to any claims growing out of, or in reference to, annuities, installments, or other moneys, claims, demands, or thing, under laws or treaties with the United States, or official acts of any officers thereof, or in any way connected with or due from the United States, unless such contract or agreement be executed and approved as follows:
>
> * * * *
>
> Second. It shall bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs indorsed upon it.
>
> .... All contracts or agreements made in violation of this section shall be null and void. ...

25 U.S.C. § 81 (1958), amended by 25 U.S.C. § 81(a)-(e) (2000).

## STATEMENT OF FACTS

**THE MANAGEMENT AGREEMENT**

10. On or about November 7, 1997, the Tribe and President entered into the Fourth Amended and Restated Management Agreement (the "Management Agreement") for the development of a casino on the Tribe's Akwesasne Territory known as the Akwesasne Mohawk Casino (the "Casino"). [A copy of the Management Agreement is attached hereto as Exhibit 1.]

11. The National Indian Gaming Commission approved the Management Agreement in December 1997.

3

12. Under the Management Agreement, President was responsible for selecting an architect and a general contractor to design and build the Casino. Management Agreement ¶ 6.2(A).

13. However, President's architect and general contractor selections were subject to the Tribe's approval. Management Agreement ¶¶ 6.3, 6.4.

14. In addition, the Management Agreement provided that, "[t]he allowable costs and compensation of the general contractor shall be on terms and in an amount to be negotiated by [President], said terms and amount to be approved by" the Tribe. Management Agreement ¶ 6.4.

15. The Management Agreement also provided that the contract with the general contractor must contain the following terms:

> (i) construction of the [Casino] shall commence within ninety (90) days following the Effective Date; (ii) the general contractor shall exert his best efforts to complete construction within six (6) months of the commencement of construction; (iii) the general contractor shall warrant the construction to be free of defects and unworkmanlike labor for a period of one year subsequent to the date the architect certifies the facility is complete. [President's] contract with the general contractor shall contain such other provisions for the protection of the parties to the Agreement as deemed appropriate by [President]. Preference in employment of qualified persons by the general contractor shall be extended in the following order of priority: <u>First</u>, members of the TRIBE; <u>second</u>, children and spouses of members of the TRIBE; and <u>third</u>, members of the Canadian St. Regis Mohawk Indian Tribe.

Management Agreement ¶ 6.4 (emphasis in the original).

## THE CONSTRUCTION CONTRACT

16. Upon information and belief, on or about January 11, 1998, President and Anderson-Blake entered into an AIA Document A101 Standard Form of Agreement Between Owner and Contractor (1987 ed.) (the "Construction Contract"). [Exhibit 2, hereto.]

17. The work described in the Construction Contract was as follows: "All labor, material, equipment and supervision for the construction of a 55,000 (+-) square foot casino facility and associated site work – As per drawings by Archon." *Id.*, Art. 2.

18. The Contract Sum identified in the Construction Contract was $14,180,564.00. *Id.*, Art. 4.

19. President was supposed to make periodic progress payments to Anderson-Blake for only those amounts certified by the architect. *Id.*, Art. 5.1.

20. The Construction Contract also stated that, "all plans and specifications to be designed by Architect." *Id.*, Art. 9.1.3.

21. Walter K. Horn, President's Senior Vice President and Secretary, and Richard Bellando, who signed as President of Anderson-Blake, executed the Construction Contract.

**THE JANUARY 14, 1998 LETTER**

22. In a January 14, 1998 letter, President's President, Ivan Kaufman, informed the Tribe that, "we would like to begin the process of obtaining some initial tribal approvals as required in the Management Agreement." [Exhibit 3 hereto, at p. 1.]

23. In that same letter, Mr. Kaufman stated that, "[t]he Tribe ... must approve the architect chosen by the Manager under Section 6.3 of the Management Agreement, as well as approving [sic] the terms and amount of the allowable costs and compensation of the general contractor under Section 6.4 of the Management Agreement." *Id.*

5

24. Mr. Kaufman informed the Tribe that, "[w]e have chosen as architect the firm of Archon Design Ltd.. We hereby request the Tribe's approval of this firm by executing on the signature block provided below." *Id.*

25. In the very next paragraph of the January 14, 1998 letter, Mr. Kaufman stated that, "[w]e have also chosen Anderson Blake Construction Corp. as general contractor for the Facility. The allowable costs and compensation of the general contractor set forth on the construction contract enclosed with this letter, and amount to $14,180,564.00.... We hereby request the Tribe's approval of the terms and amounts of these costs and compensation of the general contractor by executing in the space below." *Id.*

26. President asked the Tribe to "[p]lease indicate your approval of both the architect and the terms and amounts of the costs and compensation of the general contractor by signing on the space provided below and return the duplicate of this letter directly to the attention of the Manager...." [*Id.* at 2.]

27. On information and belief, on or about January 14, 1998, Chief Executive Officer Edward D. Smoke, Jr., purporting to act on behalf of the Tribe, approved President's architect and general contractor selections by signing Mr. Kaufman's January 14, 1998 letter.

28. The Tribe justifiably relied on President's January 14, 1998 letter, believing that its business partner, President, had secured a competent and honest general contractor, as well as an independent architect to, among other things, supervise the general contractor.

29.     Upon information and belief, the Construction Contract was never submitted to the Secretary of the Interior or the BIA Commissioner for approval, and neither the Secretary of the Interior nor the BIA Commissioner ever approved the Construction Contract.

**THE PURPORTED ROLE OF ARCHON DESIGN, LTD.**

30.     The Tribe recently learned through discovery in another litigation that Archon Design Ltd. ("Archon"), the purported architectural firm President hired to "supervise" Anderson-Blake, was nothing more than a name.

31.     The purported Archon architect in charge of the Casino project, Warren Schiffman, admitted that he was, at all times, paid by Anderson-Blake. [*See* the April 8, 2002 Affidavit of Warren Schiffman, a copy of which is attached hereto as Exhibit 4.]

32.     Moreover, Mr. Schiffman's replacement, Roger Diller, admitted in a deposition that he was employed and paid by Anderson-Blake during the entire time he worked on the Casino project. [*See* R. Diller Dep. (Apr. 10, 2002) at p. 17. The relevant pages of the Diller deposition transcript are attached hereto as Exhibit 5.]

33.     The architect has a duty to exercise reasonable care to see that the work is done in a proper manner with proper materials, and to certify payment to the contractor only upon verification that the contractor has performed the work as stated in the application for payment.

34.     When dealing with the contractor, the architect acts in a fiduciary capacity for the owner and in this position of trust must represent the owner's best interests. As a fiduciary, the architect has the duty to disclose to the owner all information that is material to the owner's interests.

35.     During the construction period, when the architect deals with the contractor and others on behalf of the owner, the architect serves as the owner's agent.

36. President, which was acting as the Tribe's agent and fiduciary in securing the services of a general contractor and an architect, had the right and the duty to insist that an independent architect formally certify all of Anderson-Blake's monthly requests for payment before President paid Anderson-Blake.

37. However, neither Archon nor any other architect signed off on the architect's signature line on any of Anderson-Blake's monthly applications for payment.

38. Upon information and belief, President paid Anderson-Blake's monthly applications without insisting on the certification of an independent architect.

39. In addition, Archon never approved a December 16, 1998 AIA Document G701 Change Order increasing the Contract Sum by $2,150,033.37 to $16,330,597.37. The G701 form itself states that it is "Not valid until signed by the Owner, Architect and Contractor." [Exhibit 6, hereto.]

40. Furthermore, when Anderson-Blake submitted its "final" application for payment of $15,828,722 on or about September 1, 2000, purported Archon architect Roger S. Diller signed off on the application. [A copy of the September 1, 2000 application for payment is attached hereto as Exhibit 7.]

41. Yet, Mr. Diller has admitted that he worked for Anderson-Blake at the time, and that he readily signed the September 1, 2000 application for payment at the request of Anderson-Blake's William Thornton and without attempting to insure its accuracy. [Exhibit 5 hereto, at pp. 47-49.]

42. The absence of an independent architect overseeing and approving the construction work has already resulted in tangible harm to the Tribe. By way of example, the Tribe learned recently that the Casino's roof – which leaks because it was improperly installed

using inferior materials – needs replacement. This repair alone may cost as much as one million dollars.

43. In addition, the Tribe recently learned through discovery in another action that Anderson-Blake expensed numerous improper charges to the Casino project including, but not limited to, work performed on Mr. Kaufman's private residence on Long Island. The full extent of Anderson-Blake's overcharges has yet to be determined.

## THE ROLE OF GARY MELIUS

44. Back on September 19, 1996, National Indian Gaming Commission ("NIGC") Chairman Harold Monteau wrote to then-Chief Edward D. Smoke, Jr., with a copy to President attorney Joseph Membrino, to advise that the NIGC would only approve the Management Agreement if Mr. Gary Melius "retains no financial interest in … the management contract." *Id.* at 1. [A copy of Chairman Monteau's letter is attached hereto as Exhibit 8.]

45. The Tribe has since learned that Mr. Melius, whom the NIGC forced to sell his "Native American Gaming" company's interest in President (which he sold to current President owner Ivan Kaufman), improperly retained a financial interest in the Management Agreement through his ownership of Archon and Anderson-Blake, which President hired (without seeking competitive bids) to design and build the Casino. [*See* Schiffman Aff., a copy of which is attached hereto as Exhibit 4, and Diller Dep. at p. 19 (attached hereto as Exhibit 5).]

46. Moreover, most, if not all, of Mr. Kaufman's $5 million purchase of Mr. Melius's interest in President has yet to be paid. [*See* Ivan Kaufman Dep., Jan. 31, 2002, at pp. 119-120, *Catskill Dev. L.L.C. v. Park Place Entm't Corp.*, 00 Civ. 8660 (CM)(GAY), currently pending in the U.S. District Court for the Southern District of New York (the relevant pages of which are attached hereto as Exhibit 9).]

47. Since President still owes Mr. Melius approximately $5 million, and since Mr. Melius owns Anderson-Blake and Archon, Mr. Melius improperly retained a financial interest in the Management Agreement. In other words, President obtained NIGC approval of the Management Agreement by false pretenses, i.e., by failing to disclose Mr. Melius's various interests in that Agreement.

## CAUSE OF ACTION
### *The Construction Contract is Void Pursuant to Former Section 81*

48. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 47 with the same force and effect as if fully set forth herein.

49. The Construction Contract provided for the payment of money in exchange for services "relative to" the Tribe's lands, namely the construction of the Casino. Therefore, pursuant to the former Section 81, the Construction Contract had to be approved by the Secretary of the Interior and the Commissioner of Indian Affairs.

50. Accordingly, pursuant to the former Section 81, the Construction Contract (including the December 16, 1998 AIA Document G701 Change Order) is null and void.

WHEREFORE, Plaintiff prays that this Court enter judgment declaring the Construction Contract and any associated change orders null and void. In addition, Plaintiff requests that the Court grant such other and further relief the Court deems just and proper.

Respectfully submitted,

June 25, 2002
Stowe, Vermont

         Barr & Associates, P.C.

        By: _____
          Russell D. Barr
          RDB 3343

         125 Mountain Road
         Stowe, Vermont 05672
         (802) 253-6272
         (802 253-6055 (fax)

         Attorneys for Relator, The Saint Regis Mohawk Tribe

Of counsel: Daniel A. Seff