HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.

ATTORNEYS AT LAW

SUITE 750 SOUTH BUILDING

1120 TWENTIETH STREET, N.W.

WASHINGTON, D.C. 20036-3406

TELEPHONE (202) 822-9100

TELECOPIER (202) 293-6492

OKLAHOMA CITY, OK OFFICE
2900 LIBERTY TOWER
100 NORTH BROADWAY
OKLAHOMA CITY, OKLAHOMA 73102-8807
(405) 232-3626

JOSEPH R. MEMBRINO

TULSA, OK OFFICE
320 S. BOSTON AVE.
SUITE 400
TULSA, OKLAHOMA 74103-3708
(918) 594-0400

September 17, 1996

**By Telecopier**

Michael Cox, Esq.
General Counsel
National Indian Gaming Commission
1441 L Street, N.W. 9th Floor
Washington, D.C. 20005

Re: President R.C.-St. Regis Management Company

Dear Michael:

On August 14 and 15, I spoke with you to clarify what Gary Melius' legal relationship may be with the President R.C.-St. Regis Management Company in the event he and President Casinos agree to a transfer of his partnership interest in the President R.C.-St. Regis Management Company to President or some third party. The following is a recapitulation of our conversation in which you described the established Commission policy applicable to this situation.

The Commission's jurisdiction over gaming agreements is limited to "management contracts." In this regard, the Commission issued NIGC Bulletin No. 94-5 (October 14, 1994) which generally distinguishes management contracts from consulting agreements, but provides for specific determination on a case by case basis. You said that if Gary Melius transfers his partnership interest, the transfer agreement can include a provision for consultation without being subject to the Commission's approval process.

Under the guidelines in Bulletin No. 94-5, a consulting agreement would be one that "identifies finite tasks or assignments to be performed, specifies the dates by which such tasks are to be completed, and provides for compensation based on an hourly or daily rate or fixed fee." It is my understanding that following consultation among Chairman Monteau, you and Chief of Staff Thomas Acevedo, Associate General Counsel Penny Coleman notified me, Mick Lura, Henry Gusky and Tom Ferguson at our July 11 meeting with the Commission staff that the fee of 50 percent of the manager's share of the gaming net revenues would be appropriate to a consulting contract so long as it was an obligation of the transferee to Gary Melius and not an obligation under the management contract running

from the Tribe to Gary Melius. If it were the latter, the buyout agreement could then be considered a management contract.

Based on the foregoing understanding, Mr. Melius is preparing to transfer to a third party his ownership interest in the Native American Management Corporation which is the general partner in the President R.C.-St. Regis Management Company. Approvals by the Tribe as required in the management contract, and President Casinos as required by the partnership agreement will be secured accordingly. To the extent that Mr. Melius may be retained as a consultant by the transferee within the meaning of NIGC Bulletin No. 94-5, Mr. Melius will not be subject to the Commission's approval process. In addition, as a consultant Mr. Melius will be able to be involved in the project's planning and development and serve as liaison to the Tribe as called upon in the course of his employment.

Would you please advise me if my understanding is correct? Time is of the essence, as senior executives from President are planning to meet with the Tribe this Friday, September 20, and need to be able to respond to questions that are being raised in the Tribe as a result of statements of Commission staff on the status of Gary Melius.

If you have any questions, please give me a call.

Sincerely,

Joseph R. Membrino

cc: Gary A. Melius
Margaret A. Swimmer