Page 1

[1]
[2] UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
[3] ------------------------------------X
    CATSKILL DEVELOPMENT, L.L.C.,
[4] MOHAWK MANAGEMENT, L.L.C., AND
    MONTICELLO RACEWAY DEVELOPMENT COMPANY, L.L.C.,
[5]
[6] Civil Action
           Plaintiffs,   No. 00 CIV 8600
[7]
         -against-
[8]
    PARK PLACE ENTERTAINMENT CORPORATION,
[9]
           Defendant.
[10] ------------------------------------X
         January 31, 2002
[11]     11:10 a.m.
[12]
[13]
[14]     Deposition of IVAN KAUFMAN, taken by
[15] Defendant pursuant to subpoena at the Offices of
[16] Swidler Berlin Shereff Friedman, LLP,
[17] 405 Lexington Avenue, New York, New York, before
[18] Ira J. Goldberg, RPR, a Certified Shorthand
[19] Reporter and Notary Public within and for the
[20] State of New York.
[21]
[22]
[23]     GREENHOUSE REPORTING, INC.
         363 Seventh Avenue - 20th Floor
[24]     New York, New York 10001
             (212) 279-5108
[25]

Page 2

[1]
[2]         APPEARANCES:
[3] THOMAS P. PUCCIO, ESQ.
         Attorney for Plaintiff Catskill
[4]      Development, L.L.C.
         230 Park Avenue
[5]      New York, New York 10169
[6]
[7] BOIES, SCHILLER & FLEXNER LLP
         Attorneys for Defendant
[8]      100 State Street
         Suite 900
[9]      Albany, New York 12207
      BY: GEORGE F. CARPINELLO, ESQ.
[10]
[11]
[12] SWIDLER BERLIN SHEREFF FRIEDMAN, LLP
         Attorneys for the Witness
[13]     405 Lexington Avenue
         New York, New York 10174
[14] BY: ANDREW J. LEVANDER, ESQ.
         LOUIS M. SOLOMON, ESQ.
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

Page 3

[1]
[2]         STIPULATIONS
[3]
[4]      IT IS HEREBY STIPULATED AND AGREED,
[5] by and between the attorneys for the
[6] respective parties hereto, that all
[7] objections, except as to form, shall be
[8] reserved to the time of trial.
[9]      IT IS FURTHER STIPULATED AND AGREED
[10] that the sealing and filing of the within
[11] deposition are hereby waived.
[12]     IT IS FURTHER STIPULATED AND AGREED
[13] that the within deposition may be
[14] subscribed and sworn to by the witness
[15] being examined before a Notary Public
[16] other than the Notary Public before whom
[17] this deposition was begun.
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

| Ivan Kaufman | Catskill Development, L.L.C., et al. v. |
|---|---|
| Vol. 1, January 31, 2002 | Park Place Entertainment Corporation |

**Page 116**

Kaufman

[2] by Arthur Goldberg at a meeting.
[3]   MR. CARPINELLO: I beg to differ.
[4] It is much more than that.
[5]   MR. LEVANDER: I am quite confident
[6] Mr. Puccio has incorporated by reference
[7] to his action in this case whether or not
[8] there are subcontractors of Anderson Blake
[9] that have or not been paid.
[10]   MR. CARPINELLO: He has incorporated
[11] your entire complaint into his complaint.
[12] Your client has testified to the souring
[13] of the atmosphere between the Mohawks and
[14] him and he has given an opinion as to the
[15] cause of that, and I am entitled to
[16] explore as to the cause of that.
[17]   MR. LEVANDER: I am going to let you
[18] answer the question. Ask the question and
[19] let the client answer. But your way out
[20] on extremely thin ice, so let's try to
[21] wrap this thing up.
[22]   Q: What did President do to try to
[23] resolve those claims?
[24]   A: We tried to reconcile the difference
[25] between what we paid Anderson Blake and, you

**Page 117**

Kaufman

[2] know, any outstanding claims that these
[3] contractors had to Anderson Blake, by, tried to
[4] do the best we can to mediate what the
[5] differences were.
[6]   Q: And were you able to mediate their
[7] difference?
[8]   A: I think it was ongoing. There was
[9] certain dispute, you know, they are offering on
[10] jobs.
[11]   Q: Did you and Mr. Horn speak to
[12] Mr. Melius about the subcontractors' claims?
[13]   A: I don't recall.
[14]   Q: What is the status of President's
[15] obligation to Miller & Schroeder? Is that loan
[16] in default?
[17]   A: I believe so.
[18]   Q: And has Miller Schroeder commenced
[19] litigation against President?
[20]   A: I believe so.
[21]   Q: What is the status of that
[22] litigation?
[23]   A: I'm not sure.
[24]   Q: Well, do you have any knowledge, has
[25] a complaint been filed?

**Page 118**

Kaufman

[2]   A: I believe so.
[3]   Q: To your knowledge has the complaint
[4] been answered?
[5]   A: I believe so.
[6]   Q: Has your deposition been taken in
[7] that case?
[8]   A: I don't, I don't think so.
[9]   Q: To your knowledge, have any
[10] depositions been taken?
[11]   A: I don't know.
[12]   Q: Has there been an exchange of
[13] documents?
[14]   A: I don't know.
[15]   Q: Has any claim been made that you
[16] were personally obligated on the Miller &
[17] Schroeder loan to President?
[18]   A: I don't think so, but I am not
[19] sure.
[20]   Q: Does President owe any money to
[21] Native American Gaming?
[22]   A: I don't know.
[23]   Q: Has Native American made a claim
[24] that funds are owed?
[25]   A: I don't know.

**Page 119**

Kaufman

[2]   Q: When you purchased Native American's
[3] interest in President R.C., what were the terms
[4] of the deal?
[5]   MR. LEVANDER: Again, this is way,
[6] way far from the merits of your claim,
[7] sir. And you are wasting this third
[8] party's time. I don't get it.
[9]   MR. CARPINELLO: I think we can get
[10] done a lot faster if you don't raise what
[11] I deem to be frivolous objections.
[12]   MR. LEVANDER: They are not
[13] frivolous, Mr. Carpinello, by any means.
[14]   MR. CARPINELLO: This is discovery,
[15] I am entitled to inquire.
[16]   MR. LEVANDER: You are not entitled
[17] to abuse this witness and this
[18] witness's —
[19]   MR. CARPINELLO: Are you instructing
[20] him not to answer the question?
[21]   MR. LEVANDER: I am not. But I am
[22] warning you in a question or two we will
[23] be on the phone with the Magistrate to try
[24] to discuss this ridiculous waste of time.
[25]   Q: What were the terms of your buyout

Page 120

*Kaufman*

[2] of Native American's interest in President R.C.?
[3] **A:** I don't recall what the terms are.
[4] **Q:** Do you recall what the purchase
[5] price was?
[6] **A:** I think it was around $5 million.
[7] **Q:** Has that been paid?
[8] **A:** Not all of it.
[9] **Q:** How much is owing?
[10] **A:** I am not sure.
[11] **Q:** Do you have any idea?
[12] **A:** A good percentage of it, I just
[13] don't know offhand.
[14] **Q:** Has Native American made any claim
[15] to President for the balance?
[16] **A:** I'm not sure.
[17] **Q:** I believe your testimony was that
[18] you did not know whether Mr. Melius had an
[19] ownership interest in Anderson Blake.
[20] **MR. LEVANDER:** Don't ask him what
[21] his testimony was. You want to ask him a
[22] question, ask a question.
[23] **MR. CARPINELLO:** Fine.
[24] **MR. LEVANDER:** It is not proper.
[25] **Q:** Do you have any knowledge whether

Page 121

*Kaufman*

[2] Mr. Melius has any ownership interest in
[3] Anderson Blake?
[4] **A:** No.
[5] **Q:** You have no knowledge?
[6] **A:** I answered your question. No.
[7] **MR. CARPINELLO:** Would you mark this
[8] please. I believe that is 145.
[9] (Exhibit 145, affidavit of Ivan
[10] Kaufman, marked for identification.)
[11] **Q:** Can you take a look, Mr. Kaufman, at
[12] Exhibit 145.
[13] (Pause in the proceedings.)
[14] **MR. PUCCIO:** Do you have a copy of
[15] that for me?
[16] **MR. CARPINELLO:** You know, I am
[17] sorry.
[18] **MR. LEVANDER:** I would like to look
[19] at it myself.
[20] (Further pause in the proceedings.)
[21] (Whereupon the witness conferred
[22] with counsel.)
[23] **MR. LEVANDER:** We are going to take
[24] a quick break.
[25] **MR. CARPINELLO:** Can Mr. Puccio look

Page 122

*Kaufman*

[2] at that while you are taking a break.
[3] (Recess taken at 2:31 p.m. until
[4] 2:40 p.m.)
[5] (Discussion held off the record.)
[6] **Q:** So during the break have you figured
[7] out how to answer the obvious question?
[8] **MR. LEVANDER:** I object to that
[9] question.
[10] **A:** What's your question?
[11] **Q:** Can you take a look at Paragraph 1
[12] of your affidavit. Do you recognize the
[13] document?
[14] **A:** Not really.
[15] **Q:** Have you ever seen it before?
[16] **A:** Very briefly.
[17] **Q:** Is that your signature on Page 5?
[18] **A:** I believe so.
[19] **Q:** Is it a declaration signed by you?
[20] **A:** Is this document signed by me?
[21] Yes.
[22] **Q:** You declared on Page 5 under
[23] penalties of perjury that the foregoing was true
[24] and correct.
[25] **A:** Yes.

Page 123

*Kaufman*

[2] **Q:** Is that correct?
[3] Is everything stated in this
[4] document true and correct?
[5] **A:** Let me just go through the document
[6] again.
[7] **Q:** Okay.
[8] **A:** Since I hadn't focused on it, let me
[9] go through it.
[10] (Pause in the proceedings.)
[11] **Q:** Have you had a chance to review that
[12] document?
[13] **A:** Yes, I did.
[14] **Q:** Is everything contained therein true
[15] and correct?
[16] **A:** I believe so.
[17] **Q:** I draw your attention to Paragraph 1
[18] on the first page, last sentence on the first
[19] page, carrying over to the next page, where you
[20] say that Anderson Blake Construction Corp.,
[21] which is owned by Gary Melius —
[22] **A:** Yes.
[23] **Q:** — was hired under a design and
[24] build contract to construct the casino.
[25] **A:** Yes.

**Page 124**

Kaufman

[2] Q: Is that true?
[3] A: I don't have knowledge whether it is
[4] true or not. I did sign this. I didn't pay
[5] much attention to it. I still to this day have
[6] no idea who is the owner or not from a legal
[7] standpoint.
[8] Q: But you swore under penalties of
[9] perjury that that statement was true, correct?
[10] A: Yes.
[11] Q: But you had no knowledge of its
[12] truthfulness, is that what you are testifying
[13] to?
[14] A: I have no knowledge as to whether or
[15] not Gary Melius is the actual owner of Anderson
[16] Blake.
[17] Q: I take it since you even today have
[18] no knowledge of Mr. Melius's ownership interest
[19] in Anderson Blake, that you never advised either
[20] Clive Cummis or Arthur Goldberg that Mr. Melius
[21] had a ownership interest in Anderson Blake.
[22] A: I don't believe I even discussed the
[23] matter with them.
[24] Q: So you never advised them of
[25] Mr. Melius's ownership in Anderson Blake?

**Page 125**

Kaufman

[2] A: I don't recall.
[3] Q: Paragraph 3 states that during 1999
[4] and early 2000 you were involved in discussions
[5] with various entities to secure financial
[6] assistance for the casino or to sell all or a
[7] portion of President's interests in the casino.
[8] Who were the various entities you are describing
[9] in there?
[10] A: I don't recall.
[11] Q: You recall none of them?
[12] A: That's correct.
[13] Q: But you recall you did have
[14] conversations with various entities?
[15] A: Yes.
[16] Q: Paragraph 4, the last sentence
[17] states that the negotiations continued for
[18] months and finally resulted in a tripartite
[19] agreement among President, the tribe and Park
[20] Place. Was that an oral or written agreement?
[21] A: Which agreement?
[22] Q: The one referred to in the last
[23] sentence of Paragraph 4.
[24] A: I believe it was both.
[25] Q: Excuse me?

**Page 126**

Kaufman

[2] A: I believe it was both.
[3] Q: When was the oral agreement reached?
[4] A: I believe that on November 11th the
[5] agreement was reached with respect to the
[6] agreement between Park Place and President with
[7] respect to the written agreement on November 4th
[8] and there were multiple times when that was
[9] confirmed from November 11th forward with
[10] offices of Park Place.
[11] Q: Now, you are referring to the
[12] meeting at Clive Cummis's office?
[13] A: That's correct.
[14] Q: In New York. Was anyone from the
[15] tribe present at that meeting?
[16] A: No.
[17] Q: When did the tribe enter into this
[18] tripartite agreement?
[19] A: At the end they had, somebody had
[20] suggested that it would be nice to have their
[21] signature on the, on the agreement.
[22] Q: When did they enter into this
[23] tripartite agreement —
[24] A: Who?
[25] Q: — that you are referring to in

**Page 127**

Kaufman

[2] Paragraph 4? The tribe.
[3] A: Maybe you can repeat the question
[4] for me.
[5] Q: When did the tribe enter into the
[6] tripartite agreement that you are referring to
[7] in Paragraph 4?
[8] A: I am not, I am not exactly sure.
[9]    (Whereupon the witness conferred
[10] with counsel.)
[11] MR. CARPINELLO: Are you taking
[12] another break?
[13] MR. LEVANDER: Yes. There is no
[14] question pending.
[15]    (Pause in the proceedings.)
[16] Q: Other than the meetings you have
[17] testified about today have you had any other
[18] meetings with Senator D'Amato? Meetings or
[19] conversations.
[20] A: I've talked to him from time to
[21] time.
[22] Q: About what?
[23] A: I don't recall.
[24] Q: You have no recollection of what you
[25] talked to Senator D'Amato about?