SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NASSAU

- - - - - - - - - - - - - - - - - - - - - - - x

PRESIDENT R.C. - ST. REGIS MANAGEMENT
COMPANY and IVAN KAUFMAN,

                    Plaintiffs,

            -against-

PARK PLACE ENTERTAINMENT CORP., ARTHUR
GOLDBERG and CLIVE CUMMINS,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - x

                    March 13, 2002
                    9:56 a.m.

                    EAB Plaza
                    Uniondale, New York



        EXAMINATION BEFORE TRIAL OF IVAN

KAUFMAN, a Plaintiff herein, taken by the respective

parties, pursuant to Notice, and held at the

above-mentioned time and place before a Notary

Public in and for the State of New York.

```
 1
 2   A P P E A R A N C E S:
 3
 4        SWIDLER BERLIN SHEREFF FRIEDMAN, LLP
          Attorneys for Plaintiffs
 5
              The Chrysler Building
 6            405 Lexington Avenue
              New York, New York 10174
 7
          BY:  ANDREW J. LEVANDER, ESQ. and
 8             LOUIS M. SOLOMON, ESQ.
 9
10
11        MELTZER LIPPE GOLDSTEIN & SCHLISSEL, P.C.
          Attorneys for Plaintiffs
12
              190 Willis Avenue
13            Mineola, New York 11501
14   (NOT PRESENT)
15
16
17        RUSKIN, MOSCOU, EVANS & FALTISCHEK, P.C.
          Attorneys for Defendant
18        PARK PLACE ENTERTAINMENT CORP.
19            190 EAB Plaza
              East Tower, 15th Floor
20            Uniondale, New York 11556
21        BY:  KEVIN SCHLOSSER, ESQ.
               TIMOTHY DeRENTA, ESQ.
22             File #: 85271
23
24
25
```

1

2    A P P E A R A N C E S:

3

4        CADWALADER WICKERSHAM & TAFT, ESQS.
         Attorneys for Defendants
5        ARTHUR GOLDBERG, Deceased and CLIVE CUMMIS

6            100 Maiden Lane
             New York, New York 10038
7
         BY:  JONATHAN M. HOFF, ESQ.
8             ALLA LERNER, ESQ.

9

10

11   ALSO PRESENT:

12       RONA KUPFERBERG

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    Kaufman
2    good relations with both sides?
3         A    No.  Just that he related to them well.
4         Q    Would you describe the transaction in
5    which you acquired Mr. Mealous's interest?
6         A    I can only do it in a general sense.  I
7    don't know all the particulars.  I think I paid him
8    a small percentage of the total purchase price up
9    front and agreed to pay the balance over a five-year
10   period.  I think it was also contingent on me -- and
11   I don't recall exactly how I structured it -- on me
12   also being successful in buying out President River
13   Boats or replacing President River Boats of
14   developing an appropriate relationship with
15   President River Boats to be the proper partner.
16             MR. HOFF:  Mr. Kaufman, I am kind
17             of interested in this testimony.  Could
18             you make an effort to speak up so I can
19             hear you?  It's very difficult.  Can you
20             move around this way?
21             MR. LEVANDER:  There is a seat
22             right here.
23        Q    What was the small percentage up front
24   that you paid?
25        A    Might have been ten percent of the

1          Kaufman

2  purchase price.

3          Q    What was the purchase price?

4          A    I think it was like 5 million.

5          Q    Was this transaction reduced to writing?

6          A    Eventually.

7          Q    What type of writing memorialized it?

8          A    It was a typed letter agreement.

9          Q    Was that agreement signed by the parties

10  to it?

11          A    Eventually.

12          Q    That's a yes?

13          A    Eventually, it was signed.

14          Q    Who signed the agreement?

15          A    I believe Gary did.

16          Q    Gary Mealous?

17          A    Yes.  I believe I did.

18          Q    Did you maintain copies of that

19  agreement?

20          A    I believe so.  In fact, I think the

21  agreement was required by the NIGC.

22          Q    Do you currently maintain a copy of it?

23          A    Probably.

24          Q    Where?

25          A    Walter Horn would have the records.

1              Kaufman

2       A    I don't recall.

3       Q    Do you recall ever putting down the

4   first small percentage?

5       A    Fifty or 500.

6       Q    Did you put down the first percentage?

7       A    Did I put down the first installment?

8       Q    Yes.

9       A    I think I did, but I'm not a hundred

10  percent sure at this time.

11      Q    Do you have any documentation of any

12  payments to Mr. Mealous?

13      A    I may.  I don't know.

14      Q    Is Mr. Horn also responsible for

15  maintaining that record?

16      A    I don't know.

17      Q    Have you ever seen documentation of any

18  payments to Mr. Mealous?

19      A    I don't recall.

20      Q    With respect to the ninety percent of

21  the transaction, did you pay any portion of that to

22  Mr. Mealous?

23      A    I don't believe so.

24           MR. HOFF:  I'm sorry?

25           THE WITNESS:  I don't believe so.

1          Kaufman

2          Q    Have you had any discussions with Mr.

3    Mealous concerning satisfying that portion of the

4    transaction?

5          A    I don't recall.

6          Q    Have you had any discussions with Mr.

7    Mealous concerning payment of any amount on the

8    transaction?

9          A    I don't recall.

10         Q    Has Mr. Mealous ever advised you that he

11   intended to institute a lawsuit against you for the

12   amounts unpaid?

13         A    I don't recall.

14         Q    Has Mr. Mealous ever indicated to you

15   any intention to take any action with respect to the

16   amounts unpaid?

17         A    I don't recall.

18         Q    In connection with the acquisition, who

19   had the responsibility to pay Mr. Mealous?

20         A    Which entity?

21         Q    Yes.

22         A    Probably PRC. I don't know which entity

23   acquired NAMC, I have to look at the organizational

24   structure to see what the prior entity was.

25         Q    It's the entity that acquired it that

```
 1                    Kaufman
 2    has the responsibility to pay?
 3         A    Could be.  I have to look at the
 4    contract to see.
 5         Q    Do you have any personal responsibility
 6    for the payment?
 7         A    No.
 8         Q    Were any personal guarantees provided?
 9         A    No.
10         Q    Do you have any agreement with Mr.
11    Mealous concerning any recovery that you are seeking
12    in this lawsuit?
13         A    No.
14         Q    Did you ever discuss that subject with
15    Mr. Mealous?
16         A    No.
17         Q    Did you ever advise the tribe that Mr.
18    Mealous was not paid the full amount of the purchase
19    price of your acquisition?
20         A    I don't recall.
21         Q    Did that subject ever come up with the
22    tribe?
23         A    I don't believe so.
24         Q    Did you ever advise the National Indian
25    Gaming Commission that Mr. Mealous had not been paid
```

Kaufman

1

2 on your acquisition?

3     A    I don't know.

4     Q    Did that topic ever come up with the

5 NIGC?

6     A    Not with me.

7     Q    To the extent you recall, did it come up

8 with anyone?

9     A    I don't think so.

10     Q    Now, you mentioned that there was

11 another entity called President River Boats

12 Casinos --

13     A    Yes.

14     Q    -- in connection with this transaction?

15     Was that the other party that had an

16 interest in the management agreement with Mr.

17 Mealous's company?

18     A    Yes.

19     Q    Let's call them President River Boats

20 for the purposes of this deposition, just to

21 distinguish them from your President R.C. - St.

22 Regis Management.  Fair enough?

23     A    All right.

24     Q    What type of entity to the extent was

25 President River Boats?