```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------
UNITED STATES OF AMERICA ex rel.
SAINT REGIS MOHAWK TRIBE,

                          Plaintiff,
             vs                                     7:02-CV-845

PRESIDENT R.C. - ST. REGIS MANAGEMENT
COMPANY and ANDERSON-BLAKE
CONSTRUCTION CORPORATION,

                          Defendants.
-------------------------------------
```

U. S. DISTRICT COURT
N. D. OF N. Y.
FILED
JUN 13 2005
AT _____ O'CLOCK ____ M
LAWRENCE K. BAERMAN, Clerk
UTICA

APPEARANCES:                              OF COUNSEL:

BARR & ASSOCIATES                         DANIEL A. SEFF, ESQ.
Attorneys for Plaintiffs                  RUSSELL D. BARR, ESQ.
125 Mountain Road
Stowe, VT 05672

MELTZER, LIPPE LAW FIRM                   LORETTA M. GASTWIRTH, ESQ.
Attorneys for Defendant President R.C.-
  St. Regis Management Company
190 Willis Avenue
Mineola, New York 11501

OFFICE OF MARLENE L. BUDD                 MARLENE L. BUDD, ESQ.
Attorneys for Defendant Anderson-Blake
  Construction Corporation
2 Brush Place
Huntington, NY 11743-6404

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

### I. INTRODUCTION

On June 26, 2002, the Saint Regis Mohawk Tribe ("the Tribe") filed this *qui tam* action pursuant to 25 U.S.C. § 81 seeking a declaration that a Construction Contract entered

into between defendants President R.C.-St. Regis Management Company ("President") and Anderson-Blake Construction Corporation ("Anderson-Blake") in 1998 is void and unenforceable. Defendants brought counter claims in quantum meruit and under the United States Constitution. Defendants moved for summary judgment and plaintiff opposed. Plaintiff also moved for summary judgment and defendants opposed. Oral argument was heard on September 10, 2004, in Utica, New York. Decision was reserved.

## II. STATUTORY BACKGROUND

Section 81, Title 25 of the United States Code, effective beginning in 1958,[1] set forth requirements for contracts entered into between an Indian Tribe, or a non-citizen individual Indian, and a non-Indian that were related to Indian land. Id. Historical and Statutory Notes. Section 81 required that any such agreement bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs. Id. It provided a *qui tam* right of action to declare void and unenforceable any contract in violation of any of its provisions. Id. The elements of a *qui tam* action under § 81 were: (1) the contract was with an Indian Tribe; (2) the contract was for payment or delivery of money or a thing of value or for granting or procuring privileges in consideration of services for said Indians; and (3) the contract was relative to the Tribe's Indian lands.

Congress found that federal courts had held that Section 81 required the Secretary of the Interior to review Indian gaming management contracts. 25 U.S.C. § 2701(2). However, there was no standard for approval of such contracts, and no standards or regulations for the conduct of Indian gaming. Id. § 2701(2)-(3). Accordingly, a new statute,

---

[1] The original statute dated from 1871, codified as 25 U.S.C. § 81 in 1958. See 25 U.S.C. § 81 Historical and Statutory Notes.

the Indian Gaming Regulatory Act ("IGRA"), was passed in 1988, to provide an appropriate statutory framework for regulating Indian gaming. 25 U.S.C. §§ 2701-2721 (2001).

Under the IGRA, the National Indian Gaming Commission ("Commission") took over authority to oversee Indian gaming, and provided that regulations be promulgated to that effect. Id. 2711(h). The IGRA requires Commission approval of management contracts for operation and management of Class II Indian gaming operations. Id. § 2711(b). A contract may also be disapproved. Id. § 2711(e). If it is subsequently determined that provisions of the IGRA were violated, the contract may be modified or voided. Id. § 2711(f).

A management contract is any contract, subcontract, or collateral agreement between an Indian Tribe and a contractor or between a contractor and a subcontractor if such contract or agreement provides for the management of all or part of a gaming operation. 25 C.F.R. § 502.15. A gaming operation is an economic entity that operates games, receives revenues, issues prizes, and pays expenses. Id. § 502.10. A collateral agreement is any contract "that is related, directly or indirectly, to a management contract, or to any rights, duties or obligations created between a tribe . . . and a management contractor . . . ." The Commission has regulations providing for procedures to be followed to investigate and correct violations. The *qui tam* provision of section 81 has been repealed, Act of March 14, 2000, Pub. L. 106-279 § 2, 114 Stat. 46, and there is no private right of action under the IGRA and the Commission regulations. Rather, the Commission itself monitors gaming activity, 25 U.S.C. § 2706(b), and assesses penalties for violations, id. § 2713.

## III. FACTUAL BACKGROUND

The following facts are undisputed, unless noted otherwise.

In the early to mid-1990s the Tribe negotiated with a management company in an attempt to obtain a contract to build and manage a casino on the Tribe's Akwesasne Reserve. However, the required government approvals could not be obtained.

Eventually, President entered into a Management Agreement with the Tribe on November 7, 1997. The Management Agreement provided that President would finance and construct the Akwesasne Mohawk Casino ("the Casino") and manage it for five years. The Tribe would pay a management fee and reimburse development expenses up to $20 million from Casino revenues. The Management Agreement was approved by the Commission on December 26, 1997.

The Management Agreement authorized President to enter into contracts for the architecture and general construction of the Casino. President and Anderson-Blake, as general contractor, entered into the Construction Contract on January 11, 1998. (See Defs.' Not. Mot. Horn Aff. Ex. H.) According to defendants, the Construction Contract between President and Anderson-Blake was approved by the Tribe, as was required by the Management Agreement. However, the Tribe states that its Chief Executive Officer, Edward Smoke, Jr., signed a letter approving Anderson-Blake as general contractor, but did not review the underlying Construction Contract. See id. Ex. D. Additionally, although defendants state that the Construction Contract was sent to the Tribe's counsel, he asserts that he never received a copy of the contract. (Pltf.'s Mem. Opp'n Ex. A at 126-27.)

Under the Construction Contract, Anderson-Blake was to construct the Casino for about $14 million. (Anderson Blake was the general contractor that had originally started building the Casino in 1993, but construction was thereafter suspended. The circumstances surrounding the early construction are disputed.)

The Casino opened on April 11, 1999. On April 17, 2000, the Tribe expelled President, citing breaches of the Management Agreement, and took over management of the Casino.

Litigation initiated by President in state court to recover what it claims to be owed by the Tribe under the Management Agreement is pending. The state court action is stayed pursuant to the parties' court-ordered stipulation.

In October 2002 the Tribe sent a letter to the Commission requesting that proceedings be initiated to void or modify the Management Agreement. See 25 C.F.R. § 535.3. The action, if any, taken by the Commission in response to the letter is unknown. However, there is no record of any proceedings.

On May 22, 2003, a decision was entered denying defendants' motion to dismiss. A finding was made that the repeal of the *qui tam* provisions of § 81 was not retroactive. In other words, the *qui tam* provisions of § 81 in effect at the time the contract was signed would govern. (See Docket No. 41.) Accordingly, it was found that subject matter jurisdiction over this action existed.

President and Anderson Blake then sent the Construction Contract to the Commission seeking approval, nunc pro tunc. By letter dated January 9, 2004, the Acting General Counsel of the Commission replied, opining that nothing in the Construction Contract provided for management of the casino gaming operation and therefore it did not require Commission approval. (See Defs.' Not. Mot. Grant Aff.)

## IV. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Richardson v. New York State Dep't of Correctional Servs., 180 F.3d 426, 436 (2d Cir. 1999). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Richardson, 180 F .3d at 436; Project Release v. Prevost, 722 F.2d 960, 968 (2d Cir. 1983). Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Matsushita Elec. Indus. Co., 475 U.S. at 587. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. Liberty Lobby, Inc., 477 U.S. at 248-49; Matsushita Elec. Indus. Co., 475 U.S. at 587.

### B. Analysis

Underlying both motions for summary judgment is the IGRA requirement that a gaming management contract must be approved by the Commission, and the provision that a contract that is not approved may be null and void. See 25 U.S.C. § 2711. On one hand,

defendants contend that the Construction Contract did not require Commission approval. On the other hand, plaintiff argues that Commission approval was required and the contract is void for failure to obtain that approval.

As noted above, a collateral agreement to a management contract also falls within the purview of section 2711. The Commission regulations clearly provide that a collateral agreement is a management contract if it "provides for the management of all or part of a gaming operation." 25 C.F.R. § 502.15. Again, an entity is a gaming operation where it "operates the games, receives the revenues, issues the prizes, and pays the expenses."

The Construction Contract at issue here is in a standard form approved and endorsed by The Associated General Contractors of America. It provides that Anderson-Blake will construct a 55,000 (+-) square foot casino facility according to plans and specifications provided by the architect. Anderson-Blake has responsibility for providing all labor, material, equipment and supervision of construction under the Construction Contract. The Construction Contract sets forth the terms of interim and final completion of construction and interim and final payment. It provides for a total payment by President to Anderson-Blake of $14,180,564.00. The only possible connection to a gaming operation mentioned in the Construction Contract is that a "casino facility" is being constructed. It contains nothing whatsoever related to operation of games, receipt of revenue, issuance of prizes, or payment of expenses. Plainly the Construction Contract does not fall within the definition of management contract/collateral agreement. No Commission approval was required, and any attempt to void the contract based upon lack of approval must fail as a matter of law.

One of the Tribe's arguments deserves a brief mention. The Tribe argues that the former 25 U.S.C. § 81, applicable in this matter as determined in the May 22, 2003, order,

required approval of the Construction Contract by the Secretary of the Interior. While the May 22, 2003, order did find that the section 81 in effect at the time of the making of the contract applied, it did not find (or address) whether the Construction Contract required approval under the former provisions. Although it is unnecessary to decide the issue, it is notable that section 81 applies, inter alia, to agreements with "any tribe of Indians, or individual Indians not citizens of the United States." 25 U.S.C. § 81 Historical and Statutory Notes. There is no question that the Construction Contract was executed by President and Anderson-Blake, neither of which is an Indian Tribe or individual Indians. Thus, it is doubtful that the Construction Contract fell within the ambit of section 81.

The parties' remaining arguments are irrelevant given the resolution of this issue. Therefore, plaintiff's motion will be denied and defendants' motion will be granted.

### C. Defendants' Counterclaims

The Tribe is protected from suits for damages by sovereign immunity. See Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509, 111 S. Ct. 905, 909 (1991). Moreover, the Tribe's immunity from suit is not waived when the claim for damages is brought in a counterclaim to a suit it filed. See id. Thus, the counterclaims must be dismissed

## V. CONCLUSION

The Construction Contract does not pertain to the management of a gaming operation. It therefore is not a management contract or collateral agreement that requires approval of the Commission under the IGRA. It necessarily follows that it is not void for failure to obtain approval.

Accordingly, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED;

2. Plaintiff's motion for summary judgment is DENIED to the extent it seeks a declaration that the Construction Contract is void;

3. Plaintiff's motion for summary judgment is GRANTED to the extent it seeks dismissal of defendants' counterclaims; and

4. This action is DISMISSED in its entirety.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

United States District Judge

Dated: June 13, 2005
Utica, New York.